**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
**AT NEW HAVEN**

| | |
|---|---|
| Robert Taylor, on behalf of himself and all others similarly situated, | Case No.  3:26-cv-00223-SVN |
| Plaintiff, | Honorable Judge Sarala V. Nagala |
| v. | Jury Trial Demanded |
| Simple Promise Pte. Ltd, | |
| Defendant. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1.      Robert Taylor ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Amended Class Action Complaint against Defendant Simple Promise Pte. Ltd ("Simple Promise" or "Defendant").

2.      This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.      Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant sent Plaintiff invasive telemarketing solicitations in clear violation of the TCPA.

4.      Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

**PARTIES**

5.      Plaintiff is a natural person and a citizen of this District.

6.      Defendant, Simple Promise Pte. Ltd is a foreign private limited company with its principal place of business at 190 Middle Road, #18-07, Singapore.

1

**JURISDICTION AND VENUE**

7.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8.      This Court has personal jurisdiction over Defendant because it directed telemarketing calls to Connecticut which establishes sufficient minimum contacts for claims arising from those telemarketing calls.  Thus, Defendant knew, or should have known, that it was directing telephone solicitations into Connecticut.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**BACKGROUND**

*The Telephone Consumer Protection Act*

10.      Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11.      "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who,

despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

12.    As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

13.    The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

14.    For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

15.    Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

16.    The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

17.    The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

18.    The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

19.    The TCPA prohibits the use of artificial or prerecorded voices when calling residential telephone numbers. 47 U.S.C. § 227(b)(1)(B).

20. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

21. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***Plaintiff Robert Taylor***

22. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

23. Plaintiff's residential telephone number is 860-910-XXXX (the "telephone number").

24. Plaintiff has been registered on the DNC list since November 2017.

25. Plaintiff uses his telephone number for personal, residential, and household purposes.

26. Plaintiff's phone number is not associated with any business, nor does he use the number for business purposes.

27. Plaintiff uses his telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

28. Plaintiff has not used his telephone number for business purposes.

29. Plaintiff has not associated his telephone number with any business.

***Defendant violated the TCPA***

30. As explained below, Defendant violated the TCPA numerous times.

4

31.     Plaintiff received one text message from phone number (302) 279-5484 on January 25, 2026 which advertised the Defendant's products.

32.     The message is below:





33. Plaintiff replied "Stop" to this message on January 26, 2026.

34. Plaintiff had never ordered, purchased, or inquired about Simple Promise or any other product from Defendant prior to receiving the message.

35. Plaintiff never provided Defendant with his telephone number and never consented to receive marketing communications from Defendant.

36. Plaintiff replied "STOP" to the text message on January 26, 2026, thereby expressly revoking any purported consent and requesting that the communications cease.

37. Despite Plaintiff's opt-out request, Defendant placed approximately six (6) additional calls to Plaintiff between January 25, 2026 and January 28, 2026.

38. On January 25, 2026, Plaintiff answered a call from (302) 246-7260. During the call, the caller promoted a product called Belly Flush, described the product's purported benefits, and encouraged Plaintiff to purchase the product.

39. During that call, Plaintiff was offered the opportunity to place an order over the telephone.

40. On January 28, 2026, Plaintiff answered a call from (302) 246-5484. The caller again promoted Belly Flush and attempted to induce Plaintiff to purchase the product.

41. The product promoted during the calls was the same product referenced and linked in the January 25, 2026 text message, demonstrating that the calls and text were part of a coordinated marketing campaign.

42. On January 26 and January 28, 2026, Plaintiff missed additional calls from (302) 246-7260 and (302) 246-5484.

43. When Plaintiff returned those calls, both numbers connected to Defendant's call center, where representatives were available to sell Defendant's products.

44. The timing, frequency, and content of the calls—particularly after Plaintiff's "STOP" request—demonstrate that Defendant was engaged in an aggressive outbound sales campaign intended to generate revenue through the sale of Belly Flush.

45. Upon information and belief, Defendant placed similar promotional calls and text messages to numerous other consumers nationwide as part of the same marketing campaign.

46. The calls and text messages were initiated for the purpose of encouraging the purchase of Defendant's goods and were made for Defendant's commercial and financial gain.

47. Despite this request, Plaintiff received approximately 6 phone calls from Simple

48. Promise between January 25, 2026 to January 28, 2026 from the Defendant.

49. On January 25, 2026, Plaintiff answered a call from phone number (302) 246-7260. The caller was marketing a product called Belly Flush from the Defendant.

50. On January 28, 2026, Plaintiff answered a call from phone number (302) 246-5484. The caller was again marketing a product called Belly Flush from the Defendant.

51. On two occasions on January 26 and 28, 2026, Plaintiff missed calls from phone numbers (302) 246-7260 and (302) 246-5484.

52. Plaintiff called these numbers back and both calls led to the Defendant's call center.

53. The Plaintiff never consented to or asked for these marketing messages.

### CLASS ACTION ALLEGATIONS

54. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4) within four years prior to the commencement of this litigation and up until the date of trial.

55.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

56.     Plaintiff reserves the right to amend the class definition.

57.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

58.     **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

59.     **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

60.     **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

61.     **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

62.     **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting

9

individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

    a.    whether Defendant violated the TCPA;

    b.    whether Defendant violated the TCPA willfully and knowingly;

    c.    whether Plaintiff is entitled to statutory damages;

    d.    whether Plaintiff is entitled to treble damages;

    e.    whether Defendant should be enjoined from further TCPA violations.

63.    **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

64.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

65.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations

of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

66. Defendant violated the TCPA willfully or knowingly.

67. Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

68. Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

**PRAYER FOR RELIEF**

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding statutory damages to Plaintiff and Class Members;

C. Providing the injunctive relief requested herein; and

D. Granting such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

*[Counsel signatures to follow on next page.]*

RESPECTFULLY SUBMITTED AND DATED this 20th day of April, 2026.

*/s/ Anthony Paronich*
Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*/s/ Carly M. Roman*
Carly M. Roman (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite1610
Chicago, IL 60611-7502
Telephone:  (872) 263-1100
Facsimile:  (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff and the Proposed Class*
